**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 14-1439

YA PAO VANG,

Petitioner,

v.

LORETTA E. LYNCH,[*]
ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Torruella, Thompson, and Barron,
Circuit Judges.

John H. Ruginski, Jr., on brief for petitioner.
Sunah Lee, Trial Attorney, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Joyce R. Branda, Acting Assistant Attorney General, Civil Division, and Cindy S. Ferrier, Assistant Director, Office of Immigration, on brief for respondent.

July 17, 2015

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), Attorney General Loretta E. Lynch is substituted for former Attorney General Eric H. Holder, Jr. as respondent.

**TORRUELLA, Circuit Judge.** Petitioner Ya Pao Vang ("Vang"), a Laotian native and citizen, seeks our review of an order of the Board of Immigration Appeals ("BIA") affirming an Immigration Judge's ("IJ") decision denying Vang's applications for withholding of removal and for protection under the Convention Against Torture. Unfortunately for Vang, however, his removal is based on a conviction for an aggravated felony and he raises no colorable legal or constitutional claims. Thus, we lack jurisdiction to review these denials and must dismiss his petition.

## I. Background

Vang is a native and citizen of Laos who was admitted to the United States as a refugee on July 31, 1986, and became a lawful permanent resident on January 15, 1988. Approximately ten years after entering the United States, on May 21, 1996, Vang was convicted, pursuant to a plea agreement, of assault with a dangerous weapon under section 11-5-2 of the General Laws of Rhode Island. He was given a suspended sentence of five years' imprisonment and five years of probation.

Removal proceedings against Vang began on September 25, 2008, when the Department of Homeland Security filed a Notice to Appear charging Vang with removability under section 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(A)(iii). The basis of this charge was Vang's Rhode Island conviction, a conviction which qualified as

an aggravated felony under the INA.[1]  Vang conceded that this conviction made him removable as charged, but he nevertheless sought withholding of removal under section 241(b)(3) of the INA, 8 U.S.C. § 1231(b)(3), and protection under the Convention Against Torture.[2]

A hearing was held before an IJ on December 22, 2011, during which Vang and his father both testified.  Each stated that he feared Vang would be persecuted if returned to Laos due to Vang's father's prior military service.  However, neither Vang nor his father could identify who would harm Vang upon his return. Moreover, Vang's father testified that he and Vang's brother had recently visited Laos for three to four weeks without incident. After considering this testimony, as well as the State Department's Country Reports on Laos which indicated that there had been

---

[1]  Section 101(a)(43)(F) of the INA, 8 U.S.C. § 1101(a)(43)(F), defines an aggravated felony as "a crime of violence (as defined in section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment [is] at least one year."  18 U.S.C. § 16, meanwhile, defines a "crime of violence" as either

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

[2]  Vang also initially sought relief under section 212(c) of the INA, but the parties agreed that he was ineligible.

significant changes in the country's conditions, the IJ denied Vang's applications. Regarding his application for withholding of removal, it found that Vang did not demonstrate a clear probability that he would be persecuted in the future if returned to Laos. Similarly, the IJ denied Vang's application under the Convention Against Torture after concluding that Vang "set forth absolutely no facts or circumstances" showing that it was more likely than not that Vang would be tortured if returned to Laos.

On January 20, 2012, Vang appealed the IJ's denial of his applications. The BIA affirmed on March 19, 2014, holding that the "Immigration Judge correctly concluded that [Vang] did not demonstrate a clear probability that he [would] be persecuted in the future if returned to Laos" and that Vang also "did not establish through objective evidence that it is more likely than not that he would be subject to torture in Laos by or with the acquiescence (including willful blindness) of a government official or person working in an official capacity." This timely appeal followed.

## II. Discussion

The BIA's decision is a final agency order, so we would ordinarily review it using traditional standards of agency review.[3] In other words, we would test the BIA's factual determinations

---

[3] Where the BIA adopts parts of the IJ's decision, we also review the adopted portion of the IJ's decision as if it were part of the BIA's. Gourdet v. Holder, 587 F.3d 1, 5 (1st Cir. 2009).

-4-

under the deferential "substantial evidence" standard and its legal conclusions de novo, while still giving deference to the BIA's interpretation of the statutes and regulations that it administers. Arévalo-Girón v. Holder, 667 F.3d 79, 81 (1st Cir. 2012). However, because Vang is removable by reason of his conviction of an aggravated felony, our jurisdiction is circumscribed to questions of law and to constitutional claims. INA § 242(a)(2)(C), 8 U.S.C. § 1252(a)(2)(C) ("[N]o court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section . . . 1227(a)(2)(A)(iii) . . . of this title . . . ."); INA § 242(a)(2)(D), 8 U.S.C. § 1252(a)(2)(D) ("Nothing in subparagraph . . . (C) . . . which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals . . . ."); see also Telyatitskiy v. Holder, 628 F.3d 628, 630 (1st Cir. 2011); Larngar v. Holder, 562 F.3d 71, 75 (1st Cir. 2009).

Recognizing this, Vang asserts that the IJ and BIA violated his right to due process by failing to consider certain evidence and by imposing too high of a burden -- legal errors he claims we retain jurisdiction to review. But simply rebranding a factual challenge as a legal one does not make it so. See Jaquez v. Holder, 758 F.3d 434, 435 (1st Cir. 2014) ("Simply

describing these factual arguments as a claim that the agency committed an error of law is insufficient to confer jurisdiction."); Hasan v. Holder, 673 F.3d 26, 33 (1st Cir. 2012) ("We have repeatedly held that '[c]loaking [a factual claim] in the garb of legal error does not alter its nature.'" (alterations in original) (quoting Ayeni v. Holder, 617 F.3d 67, 73 (1st Cir. 2010))). Vang must assert a colorable due process claim to invoke our jurisdiction, and he fails to do so.

A petitioner's right to due process entails, at its core, "the right to notice of the nature of the charges and a meaningful opportunity to be heard." Choeum v. INS, 129 F.3d 29, 38 (1st Cir. 1997). Here, Vang never alleges that he did not receive notice or that he was unable to be heard. Nor could he, since he not only received proper notice, but he was also provided a hearing where he presented witnesses and submitted evidence. See INA § 240, 8 U.S.C. § 1229a(b)(4)(B) ("In proceedings under this section, under regulations of the Attorney General -- the alien shall have a reasonable opportunity to examine the evidence against the alien, to present evidence on the alien's own behalf, and to cross-examine witnesses presented by the Government . . . ."); Muñoz-Monsalve v. Mukasey, 551 F.3d 1, 6 (1st Cir. 2008) ("[F]undamental fairness means in general terms that the alien must have a meaningful opportunity to present evidence and be heard by an impartial judge.").

-6-

Instead, Vang's contentions are that the IJ and BIA failed to consider the Country Reports on Laos and that they imposed the incorrect burden by requiring Vang to identify the specific people who would cause him harm. The IJ and BIA did no such thing. The IJ specifically referred to the Country Reports in its Analysis and Findings, noting that the Country Reports show "that there have been significant changed country conditions" in Laos and that "based on all of these facts and circumstances," Vang's petition must be denied. (Emphasis added). The BIA, meanwhile, added that "[w]hile [Vang] argues that the 2010 United States Department of State Human Rights Report for Laos shows that human rights abuses occur in that country, he has not identified portions of the report that would tend to establish that he is likely to be mistreated." (Citations omitted).

As for Vang's second contention, neither the IJ nor the BIA stated that Vang was specifically required to identify his assailants in order to have his petition granted. To the contrary, each found that the inability of Vang to identify the source of his fears of persecution and torture was just one factor -- along with the Country Reports and Vang's father's testimony that neither he nor Vang's brother were threatened during their recent trip -- that led it to conclude that Vang did not carry his burden of establishing that it is more likely than not that his life or freedom would be threatened (for his application for withholding)

or that he would be tortured (for his application under the Convention Against Torture).

At the end of the day, these alleged "due process" claims boil down to no more than a disagreement with the factual findings made by the IJ and BIA: Vang believes more weight should have been given to the Country Reports and less weight should have been given to his inability to pinpoint his fear and to his relatives' recent safe travels in Laos. This is exactly the type of reweighing of evidence and of fact-finding that we are jurisdictionally precluded from engaging in. See Hasan, 673 F.3d at 33 ("The very heart of Petitioners' claim, that the BIA's analysis regarding their fears . . . was not 'detailed' and failed to 'adequately' address the issue, is fundamentally an objection to a factual determination by the BIA and the relative evidentiary weight the agency gave to competing considerations."); Telyatitskiy, 628 F.3d at 631 ("He first argues that by failing to reference record evidence of police brutality against Jews in Ukraine, the IJ must have failed to consider that evidence entirely. A full and fair reading . . . however, suggests that this . . . argument is little more than a thinly disguised claim concerning evidentiary weight, which we are statutorily barred from reviewing.").

## III. Conclusion

Accordingly, we lack jurisdiction to consider Vang's petition and therefore dismiss it.

**DISMISSED**.