# United States Court of Appeals
## For the First Circuit

No. 13-1264

EVELYN LOPEZ,

Petitioner,

v.

ERIC H. HOLDER, JR., Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, Chief Judge,
Stahl and Kayatta, Circuit Judges.

Allan M. Tow on brief for petitioner.
Melissa Neiman-Kelting, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Stuart F. Delery, Assistant Attorney General, Civil Division, and M. Jocelyn Lopez Wright, Senior Litigation Counsel, Office of Immigration Litigation, on brief for respondent.

January 17, 2014

**LYNCH, Chief Judge**.  Evelyn Lopez petitions for review of a January 30, 2013 Board of Immigration Appeals ("BIA") decision, adopting a June 14, 2011 decision by an Immigration Judge ("IJ"), ordering removal.  It also denied her requests for waivers based on "extreme hardship," 8 U.S.C. § 1186a(c)(4)(A), and "good faith," id. § 1886a(c)(4)(B), of the joint-filing requirement for removal of conditions on permanent residency, id. § 1186a(c)(1)(A), both because she had failed to establish either "good faith" or "extreme hardship" and because the petition was denied in any event, in an exercise of the IJ's discretion, due to concerns with petitioner's moral character.  That exercise of discretion dooms her petition.

Because Lopez raises no colorable legal or constitutional claims and review is barred, the petition is dismissed for want of jurisdiction.  Id. § 1252(a)(2)(B).

I.

Petitioner Evelyn Lopez was admitted or paroled into the United States on March 3, 1995, having previously entered the country in 1993 before returning to the Dominican Republic. Petitioner is the mother of two children.  Her daughter was born and has continued to live in the Dominican Republic.  Her son, Edgar Rodriguez, is a United States citizen, born August 21, 1995. In May 1996, she married Andres Lopez, a United States citizen. Evelyn Lopez adjusted her status to that of a permanent resident on

a conditional basis in January 1997, but that status was terminated two years later.

On February 16, 1999, Evelyn Lopez and Andres Lopez filed a joint Form I-751 Petition to Remove Conditions on Residence ("Form I-751" or "petition"). The petition was denied on May 15, 2004, after Andres Lopez failed to appear for the interview. See 8 U.S.C. § 1186a(c)(2)(A)(ii). The Department of Homeland Security ("DHS") issued Evelyn Lopez a Notice to Appear ("NTA") later that day, charging her with removability based on the termination of her conditional permanent resident status. Id. § 1227(a)(1)(D)(i). The couple divorced shortly thereafter.

Petitioner admitted the factual allegations in the NTA and conceded removability through written pleadings in October 2004. In March 2005, with removal proceedings ongoing, Lopez filed a second Form I-751 with the United States Citizenship and Immigration Services ("USCIS"), a branch of DHS, requesting a discretionary waiver of the applicable joint-filing requirement, see id. § 1186a(c)(1)(A) (requiring that "the alien spouse and the petitioning spouse (if not deceased) jointly . . . submit to the Secretary of Homeland Security . . . a petition" requesting removal of conditions on permanent residency), on the ground that termination of her permanent resident status and removal would cause "extreme hardship," id. § 1886a(c)(4)(A), in part on the basis of her son's educational needs. USCIS denied the petition on

September 11, 2006, noting, inter alia, that petitioner had over $1,000,000 in assets, which would facilitate her obtaining educational assistance for her son should he return with her to the Dominican Republic.

Petitioner filed a third Form I-751 with USCIS on June 12, 2007, this time requesting a discretionary waiver on the ground that her marriage had been entered into "good faith" and was terminated through divorce. Id. § 1886a(c)(4)(B). After an interview, USCIS denied Lopez's third petition on June 12, 2009, reasoning that she had provided contradictory or otherwise unreliable evidence of cohabitation and inadequate evidence of shared financial assets. Petitioner requested review by the immigration court of both USCIS denials. See 8 C.F.R. § 216.5(f).

On November 5, 2009, Evelyn Lopez pled guilty to theft by unauthorized taking, N.H. Rev. Stat. Ann. § 637:3, after a shoplifting arrest in November 2007. Lopez received a twelve-month suspended sentence, a $500 fine, and 50 hours of community service. The state court later reduced petitioner's suspended sentence to 364 days.

The IJ conducted an individual hearing on the denial of the Form I-751s, first on March 14, 2011, and again on April 25 of that year. There, Evelyn Lopez testified as to her "good faith" waiver request that she first met Andres Lopez in December 1993 at a friend's house in New York. She said that the two did not have

-4-

a relationship at the time because she was still in a relationship with her son's father, Luis Emilio Rodriguez. Petitioner claimed that Luis Rodriguez -- who, she later learned, was married to someone else -- left her because of the pregnancy. Petitioner explained that she and Andres Lopez met again at a party in 1995 while she was still pregnant. The two began dating shortly thereafter, she said, deciding to marry after a courtship of four months.

Petitioner testified that, once married, she and Andres Lopez moved together to 117 Jamaica Ave. in New York in May 1996. She first said that she first moved in with Andres Lopez in 1994 or 1995, but then, contradicting herself, said that the two did not live together until 1996. Petitioner claimed that after about two years at 117 Jamaica Ave., she and Andres Lopez moved to 8788 Jamaica Ave., where the couple remained for one year. Neither lease was in the record. In December 1997, she said, she moved to Massachusetts after accepting a new job, but this contradicted her written statement, in which she said that she moved to Massachusetts in December 1998. When confronted with this discrepancy, petitioner said that whoever prepared the written statement had made a mistake. Petitioner testified that Andres Lopez moved with her to Massachusetts and that his name was on the lease at her first Massachusetts address, but put no lease in the record. Petitioner said that Andres Lopez returned to New York

shortly after moving, but that he would travel by bus to Massachusetts to see her every week for four years. This contradicted her written testimony that Andres Lopez never relocated from New York. Petitioner said that she saved travel receipts, but that she could not produce them because the receipts were destroyed by flooding resulting from a storm.

Petitioner testified that she and Andres Lopez filed taxes jointly from 1996 until 2001, by which point the relationship had broken down.[1] The federal tax returns she produced for 1997, 1998, and 1999 were missing the signature page. The Massachusetts tax returns for 1998 and 1999 were also unsigned.

Gloryvee Santana testified on petitioner's behalf, saying Evelyn and Andres Lopez seemed like a "normal couple." Santana claimed to have attended several birthday parties and a wedding with the two. She also said she did not think that Andres Lopez had ever lived in Massachusetts, contradicting petitioner's testimony.

As to "extreme hardship," petitioner provided evidence that her son, a public high school student, was enrolled in special classes due to his diagnosed learning disability, and that he cannot speak Spanish very well. Initially, petitioner said she

---

[1] Petitioner testified that she did not initiate divorce proceedings until 2004 and that those proceedings were finalized in 2006. A divorce decree dated January 31, 2005 was entered into the administrative record.

would not be able to bring her son with her to the Dominican Republic due to lack of resources. On cross-examination, she said he would have to come with her.

When questioned about the substantial assets documented in the September 11, 2006 USCIS denial, petitioner testified that she lost all of her investments due to foreclosures on her properties, that she had no property or bank accounts in the Dominican Republic, and that she had no property in the United States. Petitioner provided no evidence establishing the loss of value of her investments.

Petitioner also provided testimony about her arrest and conviction, which was contradicted in part by the official record, as noted by the IJ.

On June 14, 2011, the IJ denied petitioner's Form I-751 waiver requests. We summarize the holdings. As to petitioner's theft conviction, because the state court had reduced her conviction to 364 days, the crime of conviction was not for an "aggravated felony." 8 U.S.C. § 1101(a)(43)(G). This meant she could apply for the discretionary waiver relief. But the "good faith" waiver was denied because she did not show that she and Andres Lopez had an "intent to establish a life together" at the time they were married. See Rodriquez v. I.N.S., 204 F.3d 25, 27 (1st Cir. 2000) (adopting and applying "intent to establish a life together" standard in reviewing BIA's determination that petitioner

failed to establish that he had married in good faith).  The IJ further concluded that petitioner had not shown that the hardship she and her son would suffer if she were removed qualified as "extreme."  Further, the IJ commented that the record did not support the claim she had lost her considerable assets, and she could use those assets to alleviate any burdens.

Last, the IJ noted that both waivers requested by petitioner were discretionary.  8 U.S.C. § 1186a(c)(4).  In an exercise of discretion, the IJ separately denied petitioner's requests, citing "moral character concerns that arise due to the [petitioner]'s theft conviction and lack of candor regarding the conviction."

## II.

"[W]hen the BIA adopts the decision of the IJ, we review the IJ's decision directly."  Kinisu v. Holder, 721 F.3d 29, 34 (1st Cir. 2013).  Before we do that, we must satisfy ourselves that we have jurisdiction.  See Calderón-Serra v. Wilmington Trust Co., 715 F.3d 14, 17 (1st Cir. 2013).  But we do not here have jurisdiction, due to restrictions Congress has placed on judicial review.

The Immigration and Nationality Act, 8 U.S.C. §§ 1101 et seq., provides:

> [N]o court shall have jurisdiction to review
> . . . any . . . decision or action of the
> Attorney General or the Secretary of Homeland
> Security the authority for which is specified

-8-

under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

Id. § 1252(a)(2)(B); cf. Ortega v. Holder, 736 F.3d 637, 640 (1st Cir. 2013) ("Purely discretionary decisions or determinations by the BIA . . . fall beyond the review of the appellate courts.").[2] The statute in turn commits to the discretion of the Secretary of Homeland Security whether to grant a waiver on the basis of "good faith" or "extreme hardship."  8 U.S.C. § 1186a(c)(4).

The IJ separately denied petitioner's requests for a waiver in an exercise of discretion, expressing concern with petitioner's criminal record and evident lack of candor regarding her conviction.  Petitioner makes no effort to explain why this is not the end of the matter.  Instead, petitioner simply insists that, properly weighted, the evidence in the record establishes "good faith" and "extreme hardship."

The statute explains that no provision barring judicial review "shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals."  Id. § 1252(a)(2)(D). Petitioner, however, raises no such "claims" or "questions" here.[3]

---

[2]  8 U.S.C. § 1158(a) pertains to applications for asylum and is not relevant here.

[3]  In her petition, Lopez argues that the BIA and the IJ failed to "consider with adequate weight" the evidence presented that the marriage was entered into in "good faith," 8 U.S.C.

-9-

Instead, she "relitigates whether the factors relevant to . . . discretionary relief were appropriately weighed by the IJ and BIA," and that is not a colorable legal or constitutional claim. Urizar-Carrascoza v. Holder, 727 F.3d 27, 32 (1st Cir. 2013); accord De Araujo v. Gonzales, 457 F.3d 146, 155 (1st Cir. 2006); Elysee v. Gonzales, 437 F.3d 221, 223-24 (1st Cir. 2006). The statute's jurisdictional bar applies here.[4]

## III.

Evelyn Lopez's petition for review is dismissed for lack of jurisdiction.

---

§ 1886a(c)(4)(A), and that return to the Dominican Republic would cause "extreme hardship," id. § 1886a(c)(4)(A). More specifically, petitioner complains that the IJ and the BIA erred by "assigning an inordinate amount of weight" to her arrest and conviction and "insufficient weight" to, inter alia, the difficulty her son would have adjusting if he were to join petitioner in the Dominican Republic.

[4] To the extent Lopez's brief attempts to make arguments not presented to the Board, including those by analogy to forms of relief she did not request, we are barred from considering them because they were not presented to the agency. Rebenko v. Holder, 693 F.3d 87, 93 (1st Cir. 2012).